

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACY THAYER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Civil Action No. 04-71531

HON. DENISE PAGE HOOD
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Stacy Thayer brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits (DIB) 216(i) and 223, of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On October 17, 2001, Plaintiff filed an application for Social Security Disability Benefits, alleging an onset of disability date of June 12, 1998 (Tr. 42-44,

51). After the initial denial of her claim, Plaintiff filed a timely request for an administrative hearing, conducted on May 28, 2003 in Lansing, Michigan before Administrative Law Judge (ALJ) Lawrence Blatnik. Plaintiff, represented by attorney Charles A. Robison, testified. (Tr. 257-286). Michelle A. Ross, acting as Vocational Expert (VE) also testified (Tr. 286-295). Plaintiff's husband, Darryl Thayer, observed the hearing (Tr. 14). ALJ Blatnick found that although Plaintiff was unable to perform any of her past relevant work, she retained the capacity to perform a significant range of sedentary work (Tr. 22). On February 26, 2004, the Appeals Council denied review (Tr. 5-8). Plaintiff filed for judicial review of the final decision on May 10, 2004.

## BACKGROUND FACTS

Plaintiff, born October 26, 1962, was age forty when the ALJ issued his decision (Tr. 42). She graduated from high school and completed two years of college (Tr. 17). Plaintiff previously worked as a licensed practical nurse (Tr. 15). Plaintiff alleges that lower back pain, fibromyalgia, cervical osteoarthritis and a vision disorder prevents her from working (Tr. 16, 51).

### A.    Plaintiff's Testimony

On May 28, 2003 Plaintiff testified before ALJ Blatnik that she lived with her husband and two daughters in Jackson, Michigan (Tr.257, 259). Plaintiff reported that she finished twelfth grade and received an associate's degree in business, with

a major in medical record keeping (Tr. 260). She indicated that in addition to her own inability to work, her financial situation had been complicated by her husband's injury in an auto accident the previous year (Tr. 258).

Plaintiff testified that before her condition worsened, she worked at Jackson Prison as a licensed practical nurse (LPN) (Tr. 260). She indicated that her work involved a wide variety of duties, stating that "I never knew what I was going to be doing" (Tr. 262). She related that she worked in the prison's reception and guidance center, drawing blood, administering medications to prisoners "in the block," interviewing prisoners, changing dressings, processing paperwork, and transferring non-ambulating prisoners from one position to another, requiring heavy lifting (Tr. 261).

Plaintiff reported that she began experiencing back pain and hip spasms in 1997 (Tr. 263). She stated that she underwent physical therapy, but received only temporary relief. She related that in June, 1998, she stopped working after straining her back lifting a hot-tub cover (Tr. 264).

Plaintiff testified that her physician told her that she was not capable of continuing nursing or any work that required prolonged sitting (Tr. 265). She related that she experienced the most pain in her right hip, but the hip pain radiated upward, affecting her entire back and shoulders (Tr. 268). She reported that she had been receiving steroid injections for back spasms every two months for the last few years

(Tr. 267). She testified that she previously took Vicodin for pain, but had switched to Lortab (Tr. 267). She stated that she also used a Lidoderm patch, ice packs, and stretching to relieve pain (Tr. 269, 271). She testified that her condition had stayed consistent since 1998, but that she "might be slipping a little" (Tr. 270). She estimated that she had one or two "good" days a week, but the rest were bad (Tr. 271).

In addition to back problems, Plaintiff testified that she suffered weekly to bi-weekly migraines (Tr. 271-272). She testified that taking Maxalt relieved her headache, but because of its expense she used it sparingly (Tr. 273). She stated that she experienced distorted vision in her left eye (Tr. 273).

Plaintiff reported difficulty walking or standing for extended periods of time (Tr. 276). She testified that lifting a gallon of milk caused neck tension (Tr. 277). She testified that she avoided climbing stairs, but acknowledged that she shopped for groceries regularly, and estimated that she drove three times a week (Tr. 259, 278, 282). She stated that she took care of her personal grooming needs and performed light housework, but could not perform any outdoor work (Tr. 281-282).

### B. Medical Evidence

In February, 1998, x-rays of Plaintiff's right hip showed "soft tissue structures and joint spaces to be intact and normal" (Tr. 178). X-rays taken in October, 1998 showed "minimal rotoscoliosis convex to the left." Robert O. Robertson, D.O. diagnosed Plaintiff with a minimal scoliosis of the lumbar spine and scoliosis of the

thoracic spine (Tr. 171).

In October, 1998, Plaintiff sought treatment with Timothy Swartz, M.D., complaining of hip and back pain (Tr. 220). Plaintiff reported to Dr. Swartz that undergoing physical therapy relieved her discomfort somewhat, but that she still experienced "throbbing and stabbing pain," which obliged her to sleep on her left side (Tr. 220). Dr. Swartz prescribed Skelaxin for muscle spasms, along with Valium for bedtime use and Motrin during the day (Tr. 219). He also recommended that she continue her exercise regimen (Tr. 219). Later the same month, Plaintiff received trigger area steroid injections in the mid and lower lumbar areas (Tr. 218). Dr. Swartz notes indicate that Plaintiff showed no evidence of degenerative disc disease (Tr. 217). In December, 1998, Plaintiff reported that the steroid injections gave her several weeks of relief from pain (Tr. 215).

In July, 1999, Plaintiff complained to Dr. Swartz of spasm and triggering of the trapezius, midthoracic paraspinous areas, upper lumbar paraspinous areas, and SI areas (Tr. 210). He noted that Plaintiff demonstrated a good range of hip motion and that her gait and strength was normal (Tr. 210). He described Plaintiff's problems as low back pain syndrome, muscle spasm, and a "fibromyalgia-like overlay" (Tr. 210). Plaintiff reported to Dr. Swartz in January, 2000 that her functional status had diminished following a fall (Tr. 207). She described "burning" lower back pain and numbness (Tr. 207).

In June, 2000, Plaintiff described herself as "doing fairly well" to Dr. Swartz, but complained of marked headaches (Tr. 205). Dr. Swartz noted that Plaintiff also reported blurred vision in her left eye, but told him that after she consulted with a corneal specialist her eye condition was improving (Tr. 205).

In June, 2001, Plaintiff complained that she received progressively diminishing results from injections (Tr. 141). She told Dr. Swartz that she experienced difficulty with housekeeping tasks (Tr. 141). Dr. Swartz commented that "[Plaintiff] does not seem to be able to return to her former profession of nursing" (Tr. 141).

In November, 2001 Dr. Swartz completed a "Medical Source Statement Concerning Claimant's Ability to Engage in Work Related Activities" (Tr. 119). He concluded that Plaintiff's conditions prevented her from lifting more than ten pounds and that she retained only the ability to lift less than ten pounds occasionally (Tr. 122). He opined that Plaintiff's pain would interfere with her job concentration frequently (Tr. 120).

In May, 2002, Dr. Swartz noted that Plaintiff complained of neck pain (Tr. 200). He noted that Plaintiff was unable to work on a regular basis (Tr. 200). He added "cervical osteoarthritis" to Plaintiff's list of medical complaints (Tr. 200). In September, 2002 he noted that Plaintiff was thinking of going back to work (Tr. 198). Notes from a December, 2002 exam indicate that Plaintiff could only find work at a nursing home, which Dr. Swartz opined was "contraindicated given the degree of pain

[Plaintiff] has" (Tr. 195).

Plaintiff sought treatment for blurred vision in her left eye in June, 2000. Kaz Soong, M.D., indicated that Plaintiff's vision problem appeared to be caused by a left upper lid chalazion (Tr. 107). He commented that Plaintiff's vision had improved as the chalazion began to go away and that Plaintiff's astigmatism (which he believed had been caused by the chalazion) was minimal (Tr. 107). Plaintiff's optical exam indicated otherwise normal results (Tr. 107).

### C.   Vocational Expert Testimony

VE Michelle A. Ross, stating that she was familiar with the Dictionary of Occupational Titles, classified Plaintiff's previous work as a LPN as skilled at a heavy exertional level (Tr. 288). ALJ Blatnik posed the following question to the VE, asking the her to take into account Plaintiff's age, education, and work history:

Q.   "We have an individual who could not lift or carry more than 20 pounds occasionally and 10 pounds frequently. Let's assume that individual can sit for at least six hours a day, stand or walk for at least two hours in an eight-hour workday, can only do occasional stooping, kneeling, crouching, or crawling, as well as only occasional bending, twisting, or turning. In addition, the individual would need the option to sit or stand at will to relieve pain and discomfort from prolonged sitting or standing. First of all, I'm assuming that since the past work was categorized as heavy, that this person with those limitations would not be able to do the prior LPN position . . . . Let's further assume that the individual cannot do any climbing of ladders, ropes, or scaffolds, only occasional climbing of ramps or stairs, and would also be limited to only occasionally reaching, pushing, or pulling with the upper extremities. . . . . Let me introduce one additional variable. Let's now reduce the lifting capability down to 10 pounds maximum, 10 pounds occasionally, less than ten pounds frequently. . . . .Would there be jobs available that would be consistent with those limitation?" (Tr. 288-290).

The VE replied that given the above limitations, Plaintiff could not perform her past work as an LPN, but indicated that Plaintiff could perform sedentary work subject to the above limitations (Tr. 290). The VE found that Plaintiff could perform 5,700 security monitor positions, 3,600 telemarketer positions, 3,200 information clerk positions, and 4,500 bench assembler positions (Tr. 265). The VE stated that the jobs cited represented regional incidence figures for the lower two thirds of the lower peninsula of Michigan (Tr. 287).

### D.  The ALJ's Decision

Citing Plaintiff's medical records, ALJ Blatnik found that Plaintiff suffered from the severe impairments of fibromyalgia and a lower back disorder (Tr. 16). He determined that although Plaintiff had a severe impairment or combination of impairments, none met or equaled any impairment listed in 20 CRF Part 404, Appendix 1, Subpart P, Regulations No. 4 (Tr. 16). Contrary to Plaintiff's allegations, he found that she did *not* suffer a severe impairment of either cervical osteoarthritis or a vision disorder, stating that neither claim was supported by medical evidence (Tr. 16).

He found that while Plaintiff was unable to perform any past relevant work, she retained:

> "[T]he residual functional capacity to perform work except for lifting and carrying more than ten pounds; standing and walking more than two hours each in an eight-hour workday; pushing and pulling with the upper extremities

more than occasionally; climbing ladders, ropes, and scaffolds; and stooping, kneeling, crouching, crawling, bending, twisting, turning, and reaching with the upper extremities more than occasionally. The claimant is also limited to sitting no more than six hours during an eight hour day and requires a sit/stand option"
(Tr. 19).

ALJ Blatnik found that Plaintiff could perform a significant range of sedentary work (Tr. 22). The ALJ, taking into consideration Plaintiff's age, education, past relevant work experience and VE testimony, found that Plaintiff could perform the work of a security monitor, a telemarketer, an inspection clerk, and a bench assembler (Tr. 23).

The ALJ found Plaintiff's allegations regarding her limitations "not totally credible" (Tr. 22). In support of his determination, the ALJ cited x-rays performed on Plaintiff's back which showed only mild facet arthropathy and scoliosis, "with no significant degenerative changes to support the limitations claimed" (Tr. 19). The ALJ also noted Plaintiff's significant number of daily activities included caring for her daughter, laundry work, cooking, raking, mowing the lawn, driving, and visiting with relatives (Tr. 19). He observed that Plaintiff seemed "fairly personable and in no obvious distress" at her hearing (Tr. 19).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services*, 757 F.2d 803, 804 (6th Cir. 1985).

Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of

disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Treating Physician

Plaintiff argues that the ALJ erred by not giving adequate weight to the opinion of her treating physician. *Brief* at 9. Plaintiff maintains that the ALJ improperly discounted her treating physician's conclusion that her medical limitations would interfere with her job duties *frequently* and that the ALJ further erred by his failure to properly consider SSR 99-2, which governs the evaluation of a claimant alleging disability due to fibromyalgia (FMS). *Id.* Plaintiff cites *Runyon v. Apfel*, 100 F. Supp. 2d 447, 450 (E.D. Mich. 1999), which accorded significant weight to a treating physician's opinion that his patient was disabled, despite the absence of objective medical findings to sustain the conclusion, observing that physical examinations of FMS sufferers "usually yield normal results."

Generally, "[i]n determining the question of substantiality of evidence, the reports of physicians who have treated a patient over a period of time . . . are given greater weight than . . . physicians employed and paid by the government . . ." *Allen v. Califano,* 613F.2d 139, 145 (6th Cir. 1980); 20 C.F.R. §404.1527(d) (evaluating evidence from treating sources). *See Jones v. Secretary of Health and Human Services,* 945 F.2d 1365, 1370 (footnote 7) (6th Cir. 1991) "[I]t is well-settled in this circuit that treating physicians' opinions, based on objective evidence, should be accorded significant weight. If uncontradicted, the physicians' opinions are entitled to complete deference."

As a general proposition, the deference accorded the treating physician is only appropriate when the examining physician's report is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). However, this Circuit recognizes that legitimate cases of FMS, which often eludes detection using conventional diagnostic tools, mandate an alternative test which places greater weight on the treating physician's opinion, in spite of the absence of objective medical evidence.

> "In stark contrast to the unremitting pain of which fibrositis [FMS] patients complain, physical examinations will usually yield normal results--a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing

of certain 'focal tender points' on the body for acute tenderness which is characteristic in fibrositis patients."

*Preston v. Secretary of Health and Human Services*, 854 F.2d 815, 817 -818 (6th Cir. 1988).

"[T]he difficulty of supporting an opinion with clinical findings in fibromyalgia cases renders it unlikely that a treating physician's opinion will be entitled to controlling weight. Rather, the weight of the opinion must depend primarily on the factors provided in 20 C.F.R. § 404.1527, including (1) examining relationship; (2) treatment relationship, (3) supportability; (4) consistency with the record as a whole; and (5) specialization."

*Runyon v. Apfel* 100 F.Supp.2d 447, 450 (E.D.Mich.,1999).

Assuming that *Runyon's* test for the assessment of treating physicians' opinions in FMS cases is an appropriate alternative to the usual, more stringent requirement that physicians' opinions must be supported by objective tests, Plaintiff's argument still fails. Admittedly, Dr. Swartz, a rheumatoid specialist, treated Plaintiff for over four and a half years at the time of her 2003 administrative hearing, satisfying the first, second, and fifth prong of *Runyon's* test, which requires an adequate examining and treating relationship, along with specialization. However, Dr. Swartz's opinion of Plaintiff's limitations do not meet the requirements of prongs three and four of the same test. Substantial evidence, most particularly Plaintiff's stated activities of daily living, supports the ALJ's finding of non-disability. *See Push v. Secretary of Health & Human Services,* 865 F.2d 260, 1988 WL 128772, 4 (6th Cir.(Mich. (6th Cir. 1988)(unpublished) (acknowledging the *Preston,* precedent which

placed diminished importance on conventional diagnostic techniques in diagnosing FMS, but nonetheless finding that the plaintiff's fairly full activities schedule permitted the ALJ to make a finding of non-disability). "[T]he ALJ properly went beyond the medical evidence and examined circumstantial evidence indicative of [Plaintiff's] complaints of pain." *Id.*

Plaintiff's *Daily Activities Form* as well as her testimony and demeanor at the administrative hearing support the ALJ's finding. Although Plaintiff alleged constant, daily pain, she estimated that she could walk one mile without stopping (Tr. 79). Plaintiff stated that she napped "occasionally," but acknowledged that she usually was unable to nap as she wished, due to her need to care for her four year old daughter (Tr. 81). Although she stated that she could not prepare elaborate meals for her family, she continued to prepare simple breakfasts and dinners (Tr. 81). Her husband acknowledged that she mowed the lawn and raked in front of the house on a limited basis, contrary to her testimony that she performed no outdoor work (Tr. 74, 282). Plaintiff indicated that when her pain reached a certain intensity, she lacked the ability to bathe or care for her child, however, Plaintiff's husband noted that she "rarely" skipped bathing (Tr. 74, 81). Even though both Plaintiff and her husband expressed frustration at the limitations placed on her activities by her back pain, Plaintiff acknowledged that she regularly shopped for groceries and vacuumed (Tr. 82). While the ability to perform household tasks intermittently in spite of great discomfort does

not indicate an ability to engage in substantial gainful activity (*see Walston v. Gardner,* 381 F.2d 580, 586 (6th Cir.1967)), according to Plaintiff's *Daily Activities Form,* her level of housekeeping and other activity reflects regular, rather than intermittent participation.

Plaintiff's demeanor at the hearing also supports the ALJ's finding of non-disability. Plaintiff joked about her efforts to maintain her weight and volunteered enthusiastic and detailed answers in response to the ALJ's queries about her former work activity. She reported that bi-monthly cortisone injections relieved her discomfort (Tr. 266-267). She indicated that she could pick items up from the floor by bending her legs rather than bending from her back (Tr. 278). She testified that she could dress herself, taking care not to cause a muscle spasm (Tr. 281). She reported that she performed light housekeeping duties on a daily basis (Tr. 281). It should be noted that such observations are not intended to trivialize Plaintiff's medical conditions or discomfort, but to point out that Dr. Swartz's opinion that Plaintiff's pain would interfere with her job concentration frequently and his conclusion that Plaintiff could not lift more than ten pounds with any frequency conflict with numerous portions of Plaintiff's record which support a finding of non-disability (Tr. 120).

**B.    Residual Functional Capacity**

Plaintiff also argues that the ALJ's RFC failed to take into account all of her

-15-

limitations, pointing out that no medical source supported his RFC. *Brief* at 14. As cited above, the ALJ found that Plaintiff retained the residual functional capacity

> "to perform work except for lifting and carrying more than ten pounds; standing and walking more than two hours each in an eight-hour workday; pushing and pulling with the upper extremities more than occasionally; climbing ladders, ropes, and scaffolds; and stooping, kneeling, crouching, crawling, bending, twisting, turning, and reaching with the upper extremities more than occasionally. The claimant is also limited to sitting no more than six hours during an eight hour day and requires a sit/stand option"

(Tr. 19).

An RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security,* 276 F.3d 235, at 239 (6th Cir. 2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once her limitations have been taken into account." *Id.* (*quoting* 20 C.F.R. § 416.945). It is measured by a common sense approach viewing Plaintiff's conditions as a whole. *Paris v. Schweiker,* 674 F.2d 707, 710 (8th Cir. 1982). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. 20 C.F.R. § 404.1545(a)(RFC must be based on all relevant evidence).

Contrary to Plaintiff's assertion, ALJ Blatnik properly considered both objective medical evidence as well as subjective evidence of pain.[1] He noted that x-

---

[1] As discussed in section A., as a general rule, FMS cannot be appraised using conventional laboratory techniques or diagnostic tools. However, the ALJ legitimately cited Plaintiff's fairly normal test results to reject Dr. Swartz's diagnosis of osteoarthritis (Tr. 16). The range of motion tests performed which showed minimal limitations also support the ALJ's conclusion that Plaintiff's impairments did not

rays showed only "mild facet arthropathy and mild scoliosis in the thoracic spine," further commenting that Plaintiff exhibited only minimally decreased cervical and lumbar motion along with a full hip range of motion (Tr. 17). Citing Plaintiff's medical records, he found that her coordination, reflexes, and sensation were normal and that her stability was good (Tr. 17).

Although Plaintiff urges this Court to give controlling weight to Plaintiff's claimed limitations, the ALJ, noting that Plaintiff's regular activities to some extent refuted her allegations, made an adequate credibility determination. The ALJ was not required to include all of allegations of pain and limitation that he finds *not* credible. "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994), *quoting Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).

Despite Plaintiff's allegation that her condition precluded all gainful employment, the ALJ properly evaluated subjective evidence of pain. Substantial evidence supports his credibility finding which discounted a portion of Plaintiff's claims of disabling pain (see section **A.**).

The overriding question in this appeal is whether the ALJ's decision was

---

create the level of disability she alleged.

supported by substantial evidence. That I might draw a different conclusion based on these facts is of no import. Based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen, supra*, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

R. STEVEN WHALEN
U.S. Magistrate Judge

Dated: March 24, 2005

## CERTIFICATION OF SERVICE

I, the undersigned, hereby certify that I have on the 24th day of March, 2005, mailed copies of the attached REPORT AND RECOMMENDATION to the following parties:

CHARLES A. ROBISON, ESQ.
P.O. BOX 750
ALBION, MI 49224

VANESSA M. MAYS
ASSISTANT U.S. ATTORNEY
211 WEST FORT STREET
SUITE 2001
DETROIT, MI 48226

SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE REGIONAL COUNSEL
200 WEST ADAMS
30TH FLOOR
CHICAGO, IL 60606

G. K. Wilson, Judicial Assistant
Magistrate Judge R. Steven Whalen